IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Jacob Anthony Allen, | Case No: 2:20-cv-2121 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Gentry |
| Rodney Smith, *et al.*, | |
| Defendants. | |

<u>Opinion and Order</u>

Plaintiff Jacob Anthony Allen, proceeding *pro se*, brings this action under 42 U.S.C. § 1983. He alleges that defendant Deputies D.J. McCollister and Alex Pomento of the Athens County Sheriff's Office used excessive force when they arrested him in March 2020. Allen further alleges that defendant Heather Dorsey, a nurse at the Southeastern Ohio Regional Jail, was deliberately indifferent to his medical needs when he arrived at the Jail after his arrest. Allen's claims against other defendants were dismissed pursuant to the magistrate judge's initial screening report and recommendation. *See* Doc. 4.

This matter is before the Court on two motions for summary judgment – one filed by Deputies McCollister and Pomento and one filed by Nurse Dorsey. For the reasons stated below, the Court grants both motions for summary judgment.

**I.     Background**

On March 28, 2020, the Athens County Sheriff's Office received a tip that Jacob Anthony Allen was staying at a local hotel. *See* McCollister Aff., ¶ 3. There were seven warrants out for his arrest, including for arson, forgery and driving under suspension. *Id.* Deputies McCollister and Pomento went to the hotel and waited in separate police cruisers until Allen returned driving a car at about 10:30 p.m. *Id.*, ¶¶ 4–5.

The deputies approached Allen while he was in his car. Allen accelerated his car toward Deputy Pomento, who had exited his cruiser. *Id.*, ¶¶ 6–8. Deputy Pomento avoided being struck and Allen sped off in his car *Id.*, ¶¶ 8–9. The deputies followed in their cruisers as Allen led them on a six-mile chase which reached speeds of 90 miles per hour. *Id.*, ¶ 9. Two Ohio State Highway Patrol officers were dispatched to assist in the chase of Allen. *See* Konkler Aff., ¶ 4.

1

Allen encountered a dead-end road and got his car stuck in ditch near a corn field. *See* McCollister Aff., ¶ 11. He fled on foot into a wooded hillside and Deputies McCollister and Pomento followed while giving him verbal commands to surrender. *Id.*, ¶ 12. The deputies caught up to Allen about 100 yards up the hill. Allen "appeared exhausted and willing to surrender." *Id.*

Deputy McCollister ordered Allen to "lay face down on the ground, and he complied." *Id.* Deputy McCollister then mounted himself on top of Allen and handcuffed him. *Id.* Upon handcuffing Allen, Deputy McCollister assisted him to a standing position. *Id.*, ¶ 13.

The two Highway Patrol officers arrived at this point and spelled relief for the deputies by walking Allen back to the cruisers. *Id.*, ¶ 13. Other sheriff's deputies arrived to search Allen, process his car for towing and transport him to the Jail. *Id.*, ¶ 14; Pomento Aff., ¶ 14.

Allen alleges in the Complaint that Deputy McCollister punched him repeatedly in the head as he was lying on the ground in handcuffs. He alleges that it caused visible swelling. Allen further alleges that Deputy Pomento failed to intervene and that both deputies failed to respond to plaintiff's plea for medical treatment. *See* Doc. 41.

Deputy McCollister and Deputy Pomento deny that Deputy McCollister punched or struck Allen. In their affidavits, both Deputy McCollister and Deputy Pomento state that the only force which Deputy McCollister used was to place his weight on Allen while applying handcuffs and to then stand him upright. *See* McCollister Aff., ¶ 16; Pomento Aff., ¶ 15. They did not observe that Allen was injured in any way – they did not observe any swelling, redness, abrasions, bruising or bleeding. *See* McCollister Aff., ¶ 17; Pomento Aff., ¶ 16. They state that Allen did not report that he was injured and did not ask for medical care. *See* McCollister Aff., ¶ 17; Pomento Aff., ¶ 16.

Officer Nathan Konkler was one of the two Highway Patrol officers on the scene. He did not see either Deputy McCollister or Deputy Pomento strike Allen. *See* Konkler Aff., ¶ 8. He did not observe that Allen was injured, and he saw no swelling, redness, abrasions, bruising or bleeding. *Id.*, ¶ 10. Allen did not report that he was injured and did not ask for medical care. *Id.* Officer Konkler asked Allen if he needed any medical attention, and Allen said that he did not. *Id.*, ¶ 9.

With respect to Nurse Dorsey, Allen alleges that when he arrived at the Jail in the early hours of March 29, he requested medical attention and was told by a corrections officer to fill out a kite. Allen alleges that he did so and that Nurse Dorsey saw him. Despite Allen having visible swelling to his head, she allegedly did not provide him with any medical treatment.

Nurse Dorsey denies that Allen requested medical care and denies that she had any interaction with him when he arrived at the Jail. Nurse Dorsey states in her affidavit that she did not

2

work at the Jail on March 29. *See* Dorsey Aff., ¶ 4. She did not see, speak to or treat Allen on March 29. *Id.*, ¶ 5. She further states that she did not supervise or communicate with any staff regarding Allen's condition or treatment. *Id.*, ¶¶ 6–7.

Defendants have submitted all of the Jail's records for Allen from March 28, 2020 to June 25, 2020. When he was booked, he reported "feeling tired" but did not complaint of any injuries. Doc. 64-2 at PAGEID 295. According to a medical questionnaire filled out by a corrections officer on March 29, Allen had no visible signs of trauma, and there was no need for medical care noted. *Id.* at PAGEID 308. The first kite submitted by Allen was on April 4 following a physical altercation he got into while at the Jail. *Id.* at PAGEID 295, 299. Nurse Dorsey's name does not appear in Allen's records until an April 21, 2020 kite about a mental health issue. *Id.* at PAGEID 300–301.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether

"the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III. Discussion

#### A. Section 1983 Claims

Allen brings suit under § 1983 against defendants in their individual capacities. In order to prevail on a § 1983 claim, plaintiff must prove two elements: (1) he "was deprived of a right secured by the Constitution or laws of the United States," and (2) he was "subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). It is undisputed that defendants acted under color of state law. The focus then is on whether Allen was deprived of a constitutional right.

Allen alleges that two of his constitutional rights were violated. First, he alleges that his Fourth Amendment right against the use of excessive force was violated when Deputy McCollister repeatedly punched him in the head and Deputy Pomento failed to intervene. Second, he alleges that his Eighth Amendment right against deliberate indifference to a serious medical need was violated when all three defendants failed to respond to his requests for medical attention.

#### B. Deputies McCollister and Pomento

##### 1. Use of Excessive Force

The Fourth Amendment protects citizens from the use of excessive force by law enforcement officers in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Liability is imposed on officers who use excessive force and on officers who fail to intervene when they owe a duty to protect the citizen being arrested. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

In evaluating whether a use of force is excessive, the test is the "reasonableness at the moment" force is used, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. A court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake." *Id.* (internal quotation marks omitted). A court should consider the following factors in light of the totality of the circumstances: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Defendants contend that Deputy McCollister used the minimal amount of force necessary to arrest Allen and position him to be escorted to a police cruiser. Defendants have submitted evidentiary materials – in the form of their own affidavits, the affidavit of Officer Konkler, and records from the Jail – to support their factual assertions. The evidence substantiates their assertion that the only force used by Deputy McCollister was to put his body weight on Allen, who lay on the ground, while applying handcuffs and to then help Allen stand to his feet. *See* McCollister Aff., ¶ 16; Pomento Aff., ¶ 15. Deputy McCollister did not punch or strike Allen, nor were there any signs or complaints of injury. *See* McCollister Aff., ¶ 17; Pomento Aff., ¶ 16; Konkler Aff., ¶ 10. No injuries or complaints were noted when Allen arrived at the Jail. *See* Doc. 64-2 at PAGEID 295, 308.

Allen does not allege that the use of body weight to apply handcuffs or the use of a lifting movement to stand him upright was excessive. He instead claims that Deputy McCollister repeatedly punched him in the head as he lay on the ground in handcuffs. But Allen did not respond to the motion for summary judgment with any evidence to support his allegations, and his Complaint is not verified.

Allen responded to the motion by arguing that defendants are foreclosed from disputing his allegations because they did not deny them in their Answer. This argument is of no avail. In their Answer, defendants denied each and every assertion made by Allen as it pertained to his claim of excessive force.[1]

Under Rule 56 of the Federal Rules of Civil Procedure, when the movant has properly supported a motion for summary judgment with evidentiary materials, the burden shifts to the party opposing summary judgment to show that there is a genuine dispute of material fact by pointing to evidence in the record. *See* Fed. R. Civ. P. 56(a), (c)(1)(A). *See also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (holding that an opposing party may not simply rely on its pleadings; rather, he must "produce evidence that results in a conflict of material fact to be resolved by a jury"). "If a party fails to properly support an assertion or fact or fails to properly address another party's

---

[1] Allen similarly argues that none of the defendants denied his claims of deliberate indifference to a serious medical need. This is not true. The Answers of Deputies McCollister and Pomento and of Nurse Dorsey fully denied plaintiff's factual assertions. *See* Docs. 42, 43.

assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The fact that Allen is proceeding *pro se* does not negate his burden on summary judgment. *See Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993). The Sixth Circuit has held that *pro se* litigants do not get "special treatment" with respect to their burden in responding to well-supported motions for summary judgment. *United States v. Ninety Three Firearms*, 330 F.3d 414, 428 (6th Cir. 2003) (citing cases). *Accord Viergutz v. Lucent Techs., Inc.*, 375 Fed. App'x 482, 485 (6th Cir. 2010) ("Viergutz's status as a *pro se* litigant does not alter his duty on a summary judgment motion."). "There is no authority in this Circuit for the proposition that a district court must advise a *pro se* prisoner of his right to file counter-affidavits or other responsive material or that he must be alerted to the fact that his failure to so respond with such material might result in entry of summary judgment against him." *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992).

In the Court's view, Allen was both aware of his burden at the summary judgment stage and capable of attempting to satisfy it. Indeed, he filed his own motion for summary judgment (which was denied as moot after he amended the Complaint), in which he specifically discussed a nonmovant's burden under Rule 56(e). *See* Doc. 24 at PAGEID 125. The magistrate judge also issued to Allen a standard notice to *pro se* plaintiffs advising him that defendants had filed motions for summary judgment under Rule 56 and advising that he had an obligation to timely respond. *See* Doc. 65. Further, Allen has demonstrated that he is capable of litigating his case. He amended his Complaint three times and brought several discovery requests and disputes to the attention of the magistrate judge. *See* Docs. 16, 19, 33, 36, 37, 41. He obtained and submitted a Sheriff's Office record showing which deputies were involved in his arrest, and he twice moved for, and was granted, 30-day extensions to respond to the motions for summary judgment. *See* Docs. 28-1, 66, 67.

In sum, plaintiff has failed to demonstrate that there is a genuine dispute of material fact regarding defendants' factual showing that excessive force was not used on Allen. The Court thus grants summary judgment in favor of defendants on plaintiff's claim of excessive force.

    **2.**    **Deliberate Indifference**

The Eighth Amendment protects a prisoner's right against deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The same protection applies to a pretrial detainee, like plaintiff, under the Fourteenth Amendment's Due Process Clause. *Burgess v.*

*Fischer*, 735 F.3d 462, 476 (6th Cir. 2013).  A two-part test applies.  First, plaintiff must show that he objectively had a sufficiently serious medical need – one that either has been diagnosed by a physician and has mandated treatment or is so obvious that even a lay person would recognize the need for medical treatment.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004).  Second, he must show that defendant acted with a sufficiently culpable state of mind in denying medical care – one whereby defendant had knowledge of the serious medical need (or of circumstances indicating the existence of such a need) and chose to be indifferent and deny care.  *Burgess*, 735 F.3d at 476.

Allen alleges that he had visible swelling to his head as a result of Deputy McCollister's punches and that defendants ignored his requests to be taken to a hospital.  Again, he has not submitted any evidence in support of his allegations.

Defendants have demonstrated that they are entitled to summary judgment because there is no evidence of an injury or of deliberate indifference.  As discussed above, defendants have submitted uncontroverted evidence that Deputy McCollister did not punch Allen in the head, nor did they observe any injuries to him.  There is no evidence that Allen requested medical care or otherwise put defendants on notice of a need for medical care.  *See* McCollister Aff., ¶¶ 16–17; Pomento Aff., ¶¶ 15–16; Konkler Aff., ¶ 10.

The Court thus grants summary judgment in favor of defendants on plaintiff's claim of deliberate indifference.

### C. Nurse Dorsey

Allen asserts that Nurse Dorsey was deliberately indifferent to his medical needs.  He alleges that Nurse Dorsey saw him after he filled out a kite requesting medical attention at the Jail but that she failed to provide him with treatment.

Nurse Dorsey too has put forth evidence that an injury did not exist and that she was not deliberately indifferent.  According to the records of the Jail, Allen had no visible injuries when he arrived and he did not request medical care.  *See* Doc. 64-2 at PAGEID 295, 308.  Further, Nurse Dorsey did not work at the Jail on March 29 and did not see, speak to or treat Allen when he arrived.  *See* Dorsey Aff., ¶¶ 4–5.  Allen did not submit a kite until six days later, after an altercation at the Jail.  *See* Doc. 64-2 at PAGEID 295, 299.

Allen again fails to counter with any evidence to support his allegations.  Instead he suggests that Nurse Dorsey could be liable because she allegedly supervised the nursing staff.  However, Nurse Dorsey stated in her affidavit that she "did not act as a supervisor to anyone" and that no one brought to her attention a request or need for Allen to receive medical care.  Dorsey Aff., ¶¶ 6–7.  In

7

any event, liability under § 1983 must be based upon more than a mere failure to act by a supervisor or a mere right to control employees. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

The Court thus grants summary judgment in Nurse Dorsey's favor on plaintiff's claim of deliberate indifference.

**IV.     Conclusion**

Accordingly, the motions for summary filed by Deputies McCollister and Pomento and by Nurse Dorsey (Docs. 63, 64) are GRANTED and this action is DISMISSED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: June 27, 2023